UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ECG COMMERCIAL POWER, LLC, d/b/a ALLIED COMMERCIAL POWER,  Plaintiff, v. ROBERT CAFFESE, GOLF CART OUTLET, INC., GLOBAL BATTERY DIRECT, INC. AND DONALD STOCKS,  Defendants. | No. 4:24 CV 733 RWS |

## MEMORANDUM AND ORDER

This case arises out of numerous contracts for the purchase of lithium batteries between Plaintiff ECG Commercial Power, LLC, d/b/a Allied Commercial Power ("Allied") and Defendants Robert Caffese, Golf Cart Outlet, Inc. ("GCO"), Global Battery Direct, Inc., and Donald Stocks. Allied's complaint alleges breach of contract and quantum merit for Defendants' alleged failure to pay for several shipments of lithium batteries from Allied. The case is now before me on Defendants' motion to dismiss for lack of personal jurisdiction and improper venue. For the reasons discussed below, the motion will be granted.

## BACKGROUND

Plaintiff Allied is a Missouri limited liability company with its principal place of business in St. Louis, Missouri. Allied sells lithium batteries, chargers, and other related products. It has sales representatives throughout the United States.

Defendants GCO and Global Battery are North Carolina corporations with their principal places of business in North Carolina. Defendants Caffese and Stocks are North Carolina residents. Caffese is the Executive Director of Global Battery. Stocks is the President of GCO.

Allied's complaint alleges that in December 2022, Caffese, on behalf of Global, applied to be one of Allied's lithium battery dealers and requested credit terms. Allied informed Caffese that it could not provide Global with any credit terms because Global had only recently been incorporated. Allied alleges that Caffese and/or Stocks then completed the same application for GCO. Allied alleges that the application listed Caffese as its billing or accounts payable contact and that it was signed by Stocks. Allied then began doing business with Defendants.

Allied alleges that between December 2022 and March 2023, Defendants ordered over $200,000 worth of lithium batteries, charges, and other related products from Allied. Allied alleges that those orders were placed with Allied's employees and accepted at Allied's office in St. Louis, Missouri. Allied alleges that it shipped

2

the products and sent invoices in the name of Golf Cart Outlet to Caffese. Allied alleges that in March 2023, Defendants stopped paying for their orders.

Allied filed this lawsuit against Defendants on February 29, 2024 in the Circuit Court of St. Louis County. Its complaint alleges claims for breach of contract (Count I) and quantum meruit (Count II) for failure to pay $160,825 due for the battery orders. Defendants GCO and Global Battery removed the case to federal court on May 24, 2024. On May 31, 2024, Defendants Caffese, Stocks, GCO, and Global jointly filed this motion to dismiss.

## LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint for lack of personal jurisdiction. "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists . . . by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 548 F.3d 588, 591–92 (8th Cir. 2011) (internal quotation marks omitted). The "evidentiary showing required at the prima facie stage is minimal and may be tested by the pleadings, affidavits, and exhibits in support and in opposition to the motion." *Id.* at 592. The evidence is viewed in the light most favorable to the party invoking personal jurisdiction and all factual conflicts are resolved in favor of that party. *Id.* However, the party invoking

3

a court's jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014).

## DISCUSSION

Personal jurisdiction can be general or specific. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017). General jurisdiction "refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 593 (8th Cir. 2011) (internal marks omitted). Specific jurisdiction "refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state." *Id.* (internal quotation marks omitted). I will address each.

### A.     <u>General Jurisdiction</u>

A court with general jurisdiction "may hear a lawsuit against a defendant [that] has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984)). To determine general jurisdiction over a limited liability company, "the Court may consider the state of formation, principal place of business, and place of

4

citizenship of its members." *Human v. Frubbel, LLC*, No. 4:24-CV-50 RLW, 2024 WL 2048865 (E.D. Mo. May 8, 2024) (internal citations omitted).

Based on the allegations in Allied's complaint and the evidence in the record, Caffese and Stocks are North Carolina residents and GCO and Global Battery are North Carolina corporations with their principal places of business in North Carolina. *See* ECF No. 8 at 1–2. Allied does not allege that any defendant in this case has continuous and systematic contacts with Missouri. *See* ECF No. 32 at 3–4. As result, there is no general jurisdiction over Defendants in Missouri.

**B.**    **Specific Jurisdiction**

Specific jurisdiction is proper "when a defendant has certain contacts with the forum State and the cause of action arises out of those contacts." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979–80 (8th Cir. 2015). Missouri courts may exercise specific jurisdiction over an out-of-state defendant if two requirements are met: (1) jurisdiction must be allowed by the Missouri long-arm statute; and (2) the reach of the long-arm statute must comport with due process. *Viasystems*, 646 F.3d at 593.

1. Long-Arm Statute

Missouri's long-arm statute authorizes personal jurisdiction over defendants under several categories, including over defendants who transact business or form a contract within the state. Mo. Rev. Stat. § 506.500.1(1)–(2). The categories in the

5

long-arm statute, such as transacting business or making a contract, are construed broadly "to provide for jurisdiction, within the specific categories enumerated in the statute, to the full extent permitted by the Due Process Clause." *State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984).

Allied argues that Defendants' conduct satisfies Missouri's long-arm statute because the contracts at issue were formed in Missouri. "For purposes of long-arm jurisdiction, a contract is made where acceptance occurs." *Johnson Heater Corp. v. Deppe*, 86 S.W.3d 114, 119 (Mo. Ct. App. 2002). Because the contracts in this case were made over the phone, they were formed wherever "the acceptor [spoke] into the phone." *Poor Boy Tree Serv. V. Dixie Elec. Mbrshp. Corp.*, 390 S.W.3d 930, 931 (Mo. Ct. App. 2013).

In this case, Caffese, from North Carolina, discussed orders over the phone with Allied's sales representative in Georgia, Brett Clayton. Allied contends that Clayton then communicated those orders to Allied in Missouri, where they were accepted, reviewed, and processed. Defendants refute this claim and state that the orders were confirmed over the phone and accepted in North Carolina.

The U.S. District Court for the Western District of Missouri dealt with a similar formation issue in *Dairy Farmers of Am. v. Bassett & Walker Int'l, Inc.*, No. 5:11-CV-6052-FJG, 2012 WL 601232 (W.D. Mo. Feb. 23, 2012), *aff'd* 702 F.3d 472 (8th Cir. 2012). Like here, the parties in *Dairy Farmers* (DFA and B&W)

6

agreed to each transaction by phone. *Dairy Farmers*, 702 F.3d at 474. In the parties' normal course of dealing, B&W's representative in Canada would speak over the phone with DFA's representative in Michigan and negotiate a deal. *Id.* Once the parties agreed to a deal, DFA's Michigan representative would receive approval for each transaction from DFA's Missouri headquarters. *Id.* Based on these facts, the district court held that no contracts were formed in Missouri, as acceptance occurred either in Canada or Michigan.[1] *Dairy Farmers*, 2012 WL 601232, at *4.

Like in *Dairy Farmers*, neither Caffese nor Clayton were in Missouri during the phone calls and Caffese never called into Missouri place any orders. Allied has not provided evidence showing that the contracts were accepted in Missouri. Rather, acceptance of the contracts in this case occurred either in North Carolina or Georgia, and the contracts cannot form the basis of Missouri long-arm jurisdiction.

Allied further argues that Defendants' conduct satisfies the long-arm statute because they transacted business in Missouri by communicating with customer service staff in Missouri and sending payment to Missouri. "Missouri courts construe 'transaction of any business' broadly." *Dairy Farmers*, 702 F.3d at 476. But the "use of mail or telephone communications to Missouri is not by itself the transaction of business." *Id.* Even though Allied states that its products were shipped from Missouri and Defendants' payment was sent to Missouri, Defendants'

---

[1] DFA did not dispute this issue on appeal. *Dairy Farmers*, 702 F.3d at 476.

7

activities do not satisfy the statutory requirement of transacting business within Missouri. All the parties' negotiations took place outside of Missouri, none of the Defendants ever visited Missouri, and none of the Defendants own real property in Missouri or are authorized to do business in Missouri. *See Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 312 (8th Cir. 1982) (holding that defendant did not transact business in Missouri under the same facts).

2. Due Process

Even if Defendants had made a contract in Missouri or transacted business in Missouri, it does not appear that they have the sufficient contacts to satisfy the Due Process Clause.

Due process requires that a defendant have certain minimum contacts with the state, such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). "The central question is whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003). The "minimum contacts analysis look to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Fastpath*, 760 F.3d at 823 (citation omitted).

When assessing the sufficiency of a defendant's contacts, courts examine five

8

factors: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. *Pederson v. Frost*, 951 F.3d 977, 980 (8th Cir. 2020).

Allied argues that Defendants have sufficient contacts to support the exercise of personal jurisdiction because they applied for credit with Allied, because they communicated via email with Allied's Missouri office, and because they sent payment to Missouri. Defendants contend that their contact with Allied's Missouri office was incidental.

In this case, few "meaningful events" of the parties' relationship occurred in Missouri. *See Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 519 (8th Cir. 2010). For example, Allied first solicited Defendants' business outside the forum state. *Compare Scullin*, 676 F.2d at 313–314 (dismissing for lack of personal jurisdiction when plaintiff solicited nonresident business and negotiated contract out of state), *with Wells Dairy*, 607 F.3d at 519–20 (8th Cir. 2010) (exercising personal jurisdiction when nonresident solicited plaintiff's business knowing it was a resident of that state).

In addition, Allied performed only administrative processing, such as invoice generation and shipping preparation, in Missouri. *Compare Dairy Farmers*, 702 F.3d at 478 (dismissing for lack of personal jurisdiction when the plaintiff did only

9

coordination and processing in Missouri), *with Zucker Feather Prods., Inc. v. Holiday Image, LLC*, No. 2:14-cv-04298-NKL, 2015 WL 1275428, at *7 (W.D. Mo. Mar. 19, 2015) (exercising personal jurisdiction when plaintiff did "custom, substantive preparation" in Missouri). Nor do Defendants' phone calls and emails to Missouri "create a 'substantial connection.'" *Fastpath*, 760 F.3d at 824 (citation omitted).

In sum, Missouri is not "central to the parties' bargain." None of the Defendants have traveled to Missouri in connection with the contracts. All the negotiations for the contracts took place between Caffese in North Carolina and Clayton in Georgia. Defendants' only connection to Missouri is their incidental contacts with Allied.

Missouri does have some interest in this litigation because Allied was injured in Missouri. *See Miss. Lime Co. v. RJR Mining Co.*, No. 4:22-cv-00910-AGF, 2023 WL 4824560, at *7 (E.D. Mo. July 27, 2023). However, that Allied "was harmed in Missouri is not sufficient to confer jurisdiction." *Id.*; *see also Fastpath*, 760 F.3d at 822 ("That an Iowa company felt its breach does not mean that an Iowa court has jurisdiction over the non-resident defendant consistent with due process.")

Finally, convenience of the parties does not favor either party. Both parties would be inconvenienced by litigating in the other's choice of forum. However, Defendants may be more inconvenienced litigating in Missouri than Allied would

10

be litigating in North Carolina or Georgia given where the witnesses reside and where the batteries were shipped.

## CONCLUSION

Allied has not alleged that Defendants have the continuous and systematic contacts with Missouri required for general jurisdiction. Nor has it established a basis for specific jurisdiction on any minimum contacts of Defendants arising out of activities directed at Missouri. As a result, Defendants' motion to dismiss for lack of personal jurisdiction will be granted.

I will not address Defendants' arguments related to venue under Fed. R. Civ. P. 12(b)(3) or Defendants' alternative request for transfer to the Eastern District of North Carolina under 28 U.S.C. § 1404(a). Based on the facts provided about the parties' course of dealing, it is unclear whether venue would be proper in North Carolina or Georgia. As a result, I will not transfer the case.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss for lack of personal jurisdiction [20] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** without prejudice.

                                                                                                                  RODNEY W. SIPPEL
                                                                                                                  UNITED STATES DISTRICT JUDGE

Dated this 27th day of December 2024.